**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEAL PRASAD,<br><br>          Plaintiff,<br><br>          v.<br><br>TOWNSHIP OF TOMS RIVER POLICE<br>DEPARTMENT, et al.,<br><br>          Defendants. | Civil Action No. 16-7761 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Ocean County Prosecutor's Office (the "OCPO") and Assistant Prosecutor Kristin Pressman's[1] ("Pressman") (collectively, the "Moving Defendants") Motion to Dismiss Plaintiff Neal Prasad's ("Plaintiff") Complaint[2] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). (ECF No. 15.) Plaintiff filed opposition (ECF No. 19), and the Moving Defendants replied (ECF No. 26). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Moving Defendants' Motion to Dismiss is GRANTED.

---

[1] The Moving Defendants note that Plaintiff incorrectly pled Assistant Prosecutor Kristin Pressman as Assistant Prosecutor Kristen Pressman. (Defs.' Moving Br.2, ECF No. 15.)

[2] Plaintiff's Complaint names six defendants: (1) Township of Toms River Police Department (the "TRPD"); (2) Sergeant Ted Maloney ("Maloney"); (3) Detective Louis Santora ("Santora"); (4) Captain Bill Burgess; (5) Ocean County Prosecutor's Office (the "OCPO"); and (6) Assistant Prosecutor Kristin Pressman ("Pressman"). (Compl. ¶¶ 3-8, ECF No. 1.) The instant Motion was brought by the OCPO and Pressman only. (*See generally* Defs.' Moving Br. 17, 19, 20, 22, 24.) The remaining four defendants have separately filed an answer and counterclaims. (ECF No. 7.)

## I.  **Background**[3]

This case arises out of a dispute that occurred on June 12, 2010 between Plaintiff and his former employee, James McVaugh[4] ("McVaugh"). (Compl. ¶¶ 10-11, ECF No. 1.) On June 12, 2010, Plaintiff fired McVaugh, and thereafter visited McVaugh's residence in order to retrieve company equipment. (*Id.* ¶¶ 11-14.) James Lindsey-Hughes[5] ("Hughes"), one of Plaintiff's employees, accompanied Plaintiff to McVaugh's residence. (*Id.* ¶ 12.) When they arrived, Hughes remained in the vehicle while Plaintiff approached McVaugh's front porch. (*Id.* ¶¶ 13, 15.) Plaintiff summoned McVaugh to the front porch and requested that he return Plaintiff's company's equipment. (*Id.* ¶ 14.) McVaugh refused Plaintiff's request and reentered his residence. (*Id.*) While McVaugh was inside of the residence, Plaintiff approached McVaugh's tow truck to retrieve his company GPS and EZ pass. (*Id.* ¶ 16.) At that time, McVaugh called the police and alleged that Plaintiff had intentionally damaged his vehicle, as well as forcibly entered his home and assaulted him. (*Id.* ¶ 17.) Two police officers arrived at McVaugh's residence, interviewed the parties, and determined that McVaugh's allegations could not be substantiated. (*Id.* ¶¶ 18-19.) Sergeant Ted Maloney ("Maloney") arrived at the scene shortly thereafter. (*Id.* ¶ 22.)

Maloney interviewed Hughes, who "stated that he did not see exactly what happened . . . [but] did not see Plaintiff ever enter [McVaugh's] residence." (*Id.* ¶ 24.) Maloney, however, did not accept Hughes's statement and pressured Hughes into making an official statement which

---

[3] For the purpose of this Motion, the Court accepts the facts alleged in the Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The allegations included in this section are taken directly from Plaintiff's Complaint. The Court also limits its factual recitation to the factual allegations necessary to decide the instant Motion.

[4] McVaugh is not a named party in this litigation. (*See generally* Compl.)

[5] Hughes is not a named party in this litigation. (*See generally* Compl.)

alleged that "Plaintiff violently kicked in the front door and entered the residence to attack McVaugh and [McVaugh's] mother." (*Id.* ¶¶ 25, 27.) Despite his initial refusal, Hughes eventually agreed to provide an official statement to Detective Louis Santora ("Santora"). (*Id.* ¶ 27.) Plaintiff was arrested on the scene and later charged with second-degree burglary and simple assault. (*Id.* ¶ 28.)

On June 15, 2010, Hughes sent correspondence to Santora retracting his official statement. (*Id.* ¶ 29.) On June 21, 2010, Santora visited Hughes's residence to pressure him into revoking his retraction letter, asserting that Plaintiff was a "thief, manipulator[,] and con artist who did not pay his employees and that Hughes should not be working for him." (*Id.* ¶¶ 30-32.) Hughes refused to revoke his retraction letter, and Santora told Hughes that he would return with Maloney to "further discuss the issue because [Santora] knew that someone was forcing [Hughes] to make the retraction." (*Id.* ¶ 38.)

On June 30, 2010, Maloney and Santora returned to Hughes's residence in order to pressure him into revoking his retraction letter.[6] (*Id.* ¶¶ 42, 44.) Hughes initially refused and maintained that he only made the original statement against Plaintiff because Maloney had threatened to arrest him. (*Id.* ¶ 50.) Maloney and Santora subsequently threatened to charge Hughes with filing a false police report unless he "[revoked] his retraction letter, confirm[ed] his statement to [the] police[,] and state[ed] that Plaintiff had forced him to write the retraction letter." (*Id.* ¶¶ 50-51.) At that point, Hughes agreed to revoke his retraction letter and "said what the officers wanted him to say."

---

[6] Upon advice of counsel, Hughes secretly tape-recorded his entire meeting with Maloney and Santora. (Compl. ¶ 43.) Hughes provided Plaintiff with a copy of his tape-recording, and Plaintiff in turn provided the copy to the OCPO, demanding an investigation into the conduct of Maloney and Santora. (*Id.* ¶ 58.) Plaintiff alleges that the OCPO never investigated Maloney and Santora's misconduct. (*Id.* ¶ 62.)

(*Id.* ¶ 53.) On July 2, 2010, however, Hughes wrote a second retraction letter repudiating the June 30, 2010 statement that he made to Maloney and Santora. (*Id.* ¶ 56.)

On June 9, 2011, Plaintiff was charged with second-degree burglary, two counts of third-degree witness tampering, and attempting to cause bodily injury to another. (*Id.* ¶ 64.) On August 6, 2015, the OCPO dismissed the charge of witness tampering. (*Id.* ¶ 70.) On October 8, 2015, a jury acquitted Plaintiff of the remaining charges. (*Id.* ¶ 83.)

On October 24, 2016, Plaintiff filed a five-count Complaint against the Moving Defendants and four other named defendants. (*Id.* ¶¶ 3-8.) In Count One, Plaintiff alleges that the Moving Defendants' prosecution of the witness tampering charge "deprived Plaintiff of his substantive and procedural due process rights under the [Fourteenth] Amendment . . . and [Plaintiff's] right to be free from malicious prosecution under the [Fourth] Amendment[.]" (*Id.* ¶ 91.) Count Two is not brought against the Moving Defendants. (*Id.* ¶ 95.) In Count Three, Plaintiff alleges that the Moving Defendants "violated Plaintiff's [Fourth] and [Fourteenth] Amendment rights to be free from malicious prosecution without probable cause and without due process of law when [the Moving Defendants] worked in concert [with the TRPD, Maloney, and Santora] to secure false charges against him, resulting in [Plaintiff's] unlawful prosecution." (*Id.* ¶ 105.) In Count Four, Plaintiff alleges that the OCPO failed to "adequately supervise and train its officers and prosecutors . . . properly and adequately monitor and discipline its officers and prosecutors . . . [and] adequately and properly investigate citizen complaints of police misconduct[.]" (*Id.* ¶ 116.) In Count Five, Plaintiff brings a state common law malicious prosecution claim, which alleges that the Moving Defendants "charged Plaintiff with [w]itness [t]ampering, and maliciously commenced criminal proceedings against him[] with[out] probable cause[.]" (*Id.* ¶ 124.)

## II.  Legal Standard

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations[.]" *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## III.  Discussion

### A.  Federal Constitutional Claims Against Pressman In Her Individual Capacity

Plaintiff brings federal constitutional claims for malicious prosecution against Pressman in her individual capacity, pursuant to 42 U.S.C. § 1983. (Compl. ¶ 8.) The Moving Defendants argue that Pressman is entitled to the defense of absolute prosecutorial immunity with respect to Counts One and Three. (Defs.' Moving Br. 16.) Section 1983 "provides a remedy for the violation of rights

created by federal law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution[,] . . . and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In his Complaint, Plaintiff alleges violations of his Fourth Amendment and Fourteenth Amendment rights. (Compl. ¶¶ 91, 105, 120.)

In Count One, Plaintiff brings a due process claim under the Fourth and Fourteenth Amendments. (*Id.* ¶¶ 84-93.) Plaintiff alleges that he was charged and prosecuted for witness tampering "without probable cause and based solely on the misconduct and unlawful activity of . . . . Santora and Maloney[,]," which "deprived Plaintiff of his substantive and procedural due process rights under the [Fourteenth] Amendment . . . and his right to be free from malicious prosecution under the [Fourth] Amendment[.]" (*Id.* ¶¶ 85, 91.) To state a claim for deprivation of procedural due process, Plaintiff "must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Ochner v. Stedman*, 572 F. App'x 143, 148-49 (3d Cir. 2014) (internal quotation marks omitted).

In addition, "[t]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (internal quotations omitted). "Conduct can violate substantive due process if it 'shocks the conscience,' which encompasses 'only the most egregious official conduct.'" *Id.* (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). "The conduct must be 'intended to injure in some way unjustifiable by any government interest[.]'" *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). Here, Plaintiff fails to plead how "the procedures available to him did not provide due process of

law" with respect to the witness tampering charge brought against him. *Oclmer*, 572 F. App'x at 148-49. Plaintiff also fails to plead how the Moving Defendants' decision to charge Plaintiff with witness tampering "shock[ed] the conscious" or otherwise "intended to injure in some way unjustifiable by any government interest[.]" *Newman*, 617 F.3d at 782 (citation omitted). Accordingly, the factual allegations under Count One fail to state a claim for relief.

In Count Three, Plaintiff brings a malicious prosecution claim under the Fourth and Fourteenth Amendments. (Compl. ¶¶ 103-112.) Plaintiff alleges that the Moving "Defendants conspired and/or acted in concert to institute, procure[,] and continue criminal charges for [w]itness [t]ampering against Plaintiff without probable cause[,]" which "deprived Plaintiff of his right to be free from malicious prosecution and his substantive and procedural due process rights, guaranteed under the [Fourth] and [Fourteenth] Amendments[.]" (*Id.* ¶¶ 106, 111.) Under New Jersey law, the elements of a malicious prosecution claim are as follows: "(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Brunson v. Affinity Fed. Credit Union*, 972 A.2d 1112, 1119 (N.J. 2009) (citation omitted). Thus, to state a Section 1983 malicious prosecution claim, "a plaintiff must establish the elements of the common law tort as it has developed over time, and that there has been a seizure." *Smith v. New Jersey*, No. 12-478, 2012 WL 5185611, at *4 (D.N.J. Oct. 18, 2012) (citations omitted).

Here, as to the Moving Defendants, Plaintiff has failed to allege sufficient facts to establish that the prosecution was instituted with malice, that there was no probable cause for the prosecution, or that he was "seized." Further, "[t]he resolution of a criminal prosecution in one's

favor is not sufficient, of itself, to state a claim for malicious prosecution." *Id.* Accordingly, the Court finds that the factual allegations under Count Three fail to state a claim for relief.

Even assuming that Plaintiff could sufficiently plead his claims against the Moving Defendants under Counts One and Three, such claims are nonetheless barred by absolute prosecutorial immunity. "Prosecutorial immunity erects a liability shield, not unlimited in breadth, but virtually impenetrable." *Evans v. City of Newark*, No. 14-120, 2016 WL 2742862, at *10 (D.N.J. May 10, 2016). "Damages actions against prosecutors . . . should not 'survive[] the pleadings,' because a prosecutor must be unfettered in his or her duty to enforce the criminal law." *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 424-26 (1976) (alterations in original)). Simply put, "[t]he decision to initiate a prosecution . . . is protected by absolute immunity, irrespective of personal motives or the lack of evidentiary support for the charges." *Evans*, 2016 WL 2742862, at *12. Here, Counts One and Three involve malicious prosecution claims against Pressman, which allege that she conspired to bring, and did bring, charges of witness tampering against Plaintiff without probable cause. (Compl. ¶¶ 85, 91, 106, 111.) Pressman, however, is entitled to absolute prosecutorial immunity with respect to her decision to prosecute Plaintiff for witness tampering. Accordingly, Counts One and Three against Pressman in her individual capacity are barred by absolute prosecutorial immunity, and are therefore dismissed with prejudice.

## B. Federal Constitutional Claims Against the OCPO and Pressman In Her Official Capacity

"The Eleventh Amendment protects non-consenting states from suits brought in federal court by private citizens seeking money damages." *Duncan v. Office of Passaic Cty. Prosecutor*, No. 05-1931, 2012 WL 1079471, at *2 (D.N.J. Mar. 30, 2012) (citing *Pennhurst*

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). "The protection extends to state agencies as long as the state is the 'real party in interest.'" *Id.* (quoting *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 658 (3d Cir. 1989)). To this point, "county prosecutors operate as agents of the State when they engage in law enforcement activities and act as agents of the county when they engage in administrative matters." *In re Camden Police Cases*, No. 11-1315, 2011 WL 3651318, at *9 (D.N.J. Aug. 18, 2011).

"[C]ourts within the Third Circuit have consistently and uniformly held that the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices and their staff, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey." *Palmerini v. Burgos*, No. 10-210, 2011 WL 3625104, at *8 (D.N.J. Aug. 15, 2011); *see Beightler v. Office of Essex Cty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009) (granting a defendant sovereign immunity for action stemming out of decision to prosecute a plaintiff for unlawful possession of a firearm); *Nugent v. Cty. of Hunterdon*, No. 09-2710, 2010 WL 1949359, at *1 (D.N.J. May 14, 2010) (finding that while local government units can be sued under Section 1983, "under New Jersey law, a county prosecutor's office does not have a separate legal existence . . . [and] [t]herefore, New Jersey courts have consistently held that a county prosecutor's office is not a suable entity under [Section] 1983") (citations omitted); *Logan v. New Jersey*, No. 09-1528, 2010 WL 572127, at *3 (D.N.J. Feb. 17, 2010) (granting immunity for claims arising from prosecutor's office's decision to unsuccessfully pursue plaintiffs on charges of resisting arrest and inciting a riot). "Courts likewise have held that training and supervisory activities are not prosecutorial functions, and therefore [are] the responsibility of the state, not the county." *Adams v. City of Atl. City*, No. 13-7133, 2014 WL 2094090, at *5 (D.N.J. May 20, 2014) (internal quotations omitted) (holding that matters

concerning investigations of civilian complaints against police officers relate to the "law enforcement/investigatory" duties of the county prosecutor's office).

      1.    <u>Witness Tampering and Malicious Prosecution – Deprivation of Substantive and Procedural Due Process Rights under the Fourteenth Amendment (Counts One and Three)</u>

Under Counts One and Three, Plaintiff brings federal constitutional claims against the OCPO and Pressman in her official capacity, pursuant to Section 1983. (*See* Compl. ¶¶ 7-8, 84-93.) The Moving Defendants argue that the claims under Section 1983, which include Counts One, Three, and Four, "should be dismissed with prejudice on the basis of sovereign immunity[.]" (Defs.' Moving Br. 8.) "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution[,] . . . and must show that the alleged deprivation was committed by a person acting under color of state law." *Atkins*, 487 U.S. at 48. Neither a state, nor its officials are "persons" for the purposes of Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Dorsett v. N.J. State Police*, No. 04-5652, 2007 WL 556890, at *2-3 (D.N.J. Feb. 15, 2007).

Here, Plaintiff seeks money damages in the amount of two million dollars. (Compl. 25.) With respect to Count One, the Complaint alleges that the Moving "Defendants' . . . prosecution of the charge of [w]itness [t]ampering . . . deprived Plaintiff of his substantive and procedural due process rights under the [Fourteenth] . . . and [] [Fourth] Amendment[s.]" (*Id* ¶ 91.) With respect to Count Three, the Complaint alleges that the Moving "Defendants violated Plaintiff's [Fourth] and [Fourteenth] Amendment rights to be free from malicious prosecution . . . when they worked in concert to secure false charges against [Plaintiff.]" (*Id.* ¶ 105.) At bottom, the Court finds that Plaintiff seeks to hold the Moving Defendants liable for actions "arising out of their law enforcement functions." *Duncan*, 2012 WL 1079471, at *2. Further, "Section 1983 provides a

federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State. . . . The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will*, 491 U.S. at 66. Accordingly, because immunity has not been waived here, and neither states nor their officials are subject to liability under Section 1983, Counts One and Three against the OCPO and Pressman in her official capacity are dismissed with prejudice.

      2.    Due Process – Custom, Policy or Practice claim against the OCPO (Count Four)[7]

With respect to Count Four, Plaintiff alleges that the OCPO "developed, implemented, enforced, encouraged[,] and sanctioned de facto customs, policies and/or practices which exhibited a deliberate indifference to the constitutional rights of citizens[.] (Compl. ¶ 115 (emphasis removed).) Plaintiff seeks to hold the OCPO liable for its purported "failure to: (a) adequately supervise and train its officers and prosecutors . . . thereby failing to adequately discourage further constitutional violations; (b) properly and adequately monitor and discipline its officers and prosecutors . . . ; (c) adequately and properly investigate citizen complaints of police misconduct and instead, tolerating and acquiescing in such misconduct." (*Id.* ¶ 116.) Plaintiff does not state specific facts regarding how the policy or custom(s) of the OCPO caused his injury that would allow his claim to cross "the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678; *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (stating that "to sustain a [Section] 1983 claim for municipal liability, the plaintiff must 'simply establish a municipal custom coupled with causation'") (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).

---

[7] Count Four does not name Pressman as a defendant. (*See* Compl. ¶¶ 113-22.)

Causation requires "a plausible nexus or affirmative link between the . . . custom and the specific deprivation of constitutional rights at issue." *Bielevicz*, 915 F.2d at 850 (internal quotations omitted). In addition, Plaintiff is required to show "deliberate indifference to the constitutional rights of [the state's] inhabitants." *Groman*, 47 F.3d at 637 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)). Plaintiff's vague claims of a policy or custom and inadequate training/supervision, without anything more, are insufficient to state a claim against the OCPO under Section 1983. Further, the OCPO is entitled to immunity from claims involving training and supervisory activities that concern investigations of civilian complaints, because such matters relate to the OCPO's "law enforcement/investigatory" duties and, therefore, are the responsibility of the state. *See Adams*, 2014 WL 2094090, at *5. Accordingly, Count Four with respect to the OCPO barred by the Eleventh Amendment, and is dismissed with prejudice.

## C.  State Common Law Malicious Prosecution (Count Five)

Count Five alleges a state common law malicious prosecution claim against the OCPO and Pressman, pursuant to 28 U.S.C § 1367(a). (Compl. ¶¶ 1, 123-31.) The Moving Defendants argue that Plaintiff's state law claim should be dismissed if his federal claims are dismissed.[8] (Defs.' Moving Br. 24-25.) The Supreme Court has held that "[Section] 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." *Raygor v. Regents of the Univ.*

---

[8] The Moving Defendants also argue that the state common law claim for malicious prosecution should be dismissed because Plaintiff failed to file a notice of a tort claim as required by the Tort Claims Act ("TCA"). (Defs.' Moving Br. 22-24.) Failure to file notice of a tort claim bars recovery against public entities or public employees. *Velez v. City of Jersey City,* 850 A .2d 1238, 1242-43 (N.J. 2004). Here, Plaintiff alleges constitutional violations under Counts One, Three, and Four, and brings a common law state tort claim under Count Five. (Compl. ¶¶ 123-31.) Because the Court dismisses Plaintiff's federal constitutional claims against the Moving Defendants, the Court need not reach this issue here as "[Section] 1367(a)'s grant of jurisdiction does not extend to [state common law] claims against nonconsenting state defendants." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002).

*of Minn.*, 534 U.S. 533, 542 (2002). Thus, "a state retains sovereign immunity for all state law claims unless the state consents to suit." *Allen v. New Jersey, Pub. Def.*, No. 16-8661, 2017 WL 3086371, at *8 (D.N.J. July 20, 2017) (citing *Raygor*, 534 U.S. at 540-41); *see also King v. Christie*, 981 F. Supp. 2d 296, 310 n.12 (D.N.J. 2013) (finding that, under the Eleventh Amendment, a plaintiff "may not bring state law claims . . . against the State regardless [of] the type of relief it seek[s]," and that "supplemental jurisdiction does not authorize district courts to exercise jurisdiction over claims against non-consenting states"). To that end, "courts have held that the State of New Jersey has not articulated a clear waiver of sovereign immunity in regard to state common law claims." *Allen*, 2017 WL 3086371, at *8 (citation omitted). Here, the OCPO and Pressman are a nonconsenting state defendants, and, as discussed above, the Court dismisses Plaintiff's federal claims. Thus, absent a waiver by the State, the Court lacks jurisdiction over the malicious prosecution common law claim against the OCPO and Pressman. *See Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 405 (D.N.J. 2008). Accordingly, Count Five against the OCPO and Pressman is barred.

IV.    **Conclusion**

For the reasons set forth above, the Court GRANTS the Moving Defendants' Motion to Dismiss. Counts One, Three, Four, and Five against the OCPO are dismissed with prejudice. Counts One, Three, and Five against Pressman in her official and individual capacities are dismissed with prejudice. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** September 14, 2017

13